NATIONAL LIBERTY INSURANCE COMPANY *v.* SPHARLER.

Opinion delivered January 24, 1927.

1. INSURANCE—WARRANTY CLAUSES—SUBSTANTIAL COMPLIANCE.—Under Crawford & Moses' Dig., § 6148, a substantial compliance with the fireproof iron safe and the unconditional ownership clauses of a fire insurance policy is sufficient.

2. INSURANCE—IRON SAFE CLAUSE.—Evidence *held* to show substantial compliance with the fireproof iron safe clause in a fire insurance policy where the insured's books were kept in an iron file lined with asbestos, if any ordinarily prudent person under like circumstances would have believed that it was fireproof.

3. INSURANCE—SOLE AND UNCONDITIONAL OWNERSHIP.—The sole and unconditional ownership of property, for the purposes of insurance, is in those upon whom the loss insured against would certainly fall, not as a matter of mere contract obligation, but as the result of real *bona fide* rights in the property insured.

4. INSURANCE—SOLE AND UNCONDITIONAL OWNERSHIP.—A condition in a policy of fire insurance that insured is the sole and unconditional owner of the property is substantially complied with where, of personal property insured for $2,100, a single item was subject to the vendor's reservation of title on which $20 was due, especially in view of the fact that insured did not know that the seller retained title.

5. APPEAL AND ERROR—INSTRUCTION—HARMLESS ERROR.—Where undisputed proof showed that the insured was entitled to recover on a fire policy, the giving of an erroneous instruction on the question of plaintiff's unconditional ownership was not prejudicial.

Appeal from Jefferson Circuit Court; *T. G. Parham,* Judge; affirmed.

*McMillen & Scott,* for appellant.

*Rowell & Alexander,* for appellee.

MEHAFFY, J.   The appellees filed suit in the Jefferson County Circuit Court, alleging, among other things, that, on the 5th day of December, 1924, defendant executed and delivered to the plaintiff, Herbert S. Spharler, its policy of insurance for the sum of $2,100, wherein it agreed to insure the plaintiff for the space of one year from date, against loss or damage by fire, to the personal property located in building known as 2402 West 13th Avenue, Pine Bluff, Arkansas; $1,200 was on the general stock of merchandise, $800 on the store and office fur-

niture and fixtures, etc., and $100 on household goods. That the plaintiff paid the defendant a premium of $57.96; that the policy was a regular standard form. That, on December 26, 1924, the property was destroyed by fire; that plaintiff complied with the terms of the policy with reference to notice and proof of loss; that plaintiff, after the fire, had assigned his interest to H. H. Ferguson, trustee.

The answer admits the issuance of the policy; that it was a regular standard form; denies that the property was totally destroyed, and denies that plaintiff complied with the terms of the policy with reference to the notice or proof of loss. Defendant pleads especially the record warranty clause, and states that the plaintiff had not complied with the clauses mentioned in its answer.

The appellant, in its brief, says:

"We will discuss the issues raised on this appeal under the following heads:

"1.   Was the assured required to comply with the record warranty clause in the policy?

"2.   Was there a waiver of the sale and unconditional ownership clause in the policy?"

No other questions are argued in appellant's brief, except the appellant complains of instruction No. 3, requested by plaintiff and given by the court.

In determining the question as to whether the assured complied with the record warranty clause in the policy, it is important to keep in mind that a strict compliance is not required, but the statute itself provides that proof of a substantial compliance with the terms and conditions shall be deemed sufficient and entitle the plaintiff to recover in any such action.

The undisputed proof in the case shows that Mr. Tracy Mills, who had been in the insurance business for twenty-five years, went to plaintiff's place of business for the purpose of getting plaintiff to take insurance. Mr. Mills went back a second time and looked around, went into the feed-room, looked the stock over, asked and was told what it averaged. Plaintiff said: "After

looking the stock over and talking with me, he said $2,100 would be all he could write, and I told him the place would run much more than that.'' Mr. Mills, the experienced insurance agent, had made two trips to the place of business, had looked over the property to be insured, himself, and of course looked over it for the purpose of determining its value and how much insurance he could write, and then concluded, not from any representations made by the plaintiff, but from the examination of the stock himself, that he would insure it for $2,100. The proof also shows that the National Credit File was made of some kind of heavy iron, lined with asbestos, guaranteed to keep any set of books. It was purchased by the plaintiff with the understanding and belief that it was fireproof. While Mr. Mills, the insurance agent, says in his testimony that it was not, he also says that it might be called a fireproof safe, just as some light safe might be called fireproof. The testimony shows that plaintiff's safe or file was made of heavy iron and lined with asbestos. Fireproof does not mean that the safe would resist heat of any particular duration, but it means, at best, that it is constructed of fireproof materials, such as iron, lined with asbestos, as in this case. The insurance agent who sought and obtained the contract of insurance, as we have already said, inspected the goods to be insured on two different occasions. He was in the business, and had been for twenty-five years. The assured, of course, knew nothing about insurance. He made an honest effort to comply with the terms of the policy. He used a safe or file made of iron and lined with asbestos. He thought it was fireproof, and any ordinary person would have believed that it was a fireproof safe in the meaning of the policy. The testimony in this case shows that there was a substantial compliance with this provision of the policy. A substantial compliance is all that would be required, even without our statute, but the statute expressly provides that a substantial compliance only is necessary. Crawford & Moses' Digest, § 6148.

Not only that, but the insurance agent inspected the stock and everything he insured, and he evidently knew what sort of safe he had. Plaintiff testified that he kept a merchandise account, a list of his cash sales, and kept them in the National Credit File. He also testified that he kept his charge tickets in the same file; that this file is so constructed that you can keep a general set of books in it, and it is sold generally for that purpose.

Keeping the books in a fireproof safe or some secure place does not necessarily mean a place absolutely secure against fire, and, where the assured selects a place to keep his books and acts in good faith, and with such care as prudent men would exercise under like circumstances, this clause in the policy is not violated. A fireproof safe is one which is within the fair meaning of this clause if it is such as is commonly used, and such as, in the judgment of prudent men in the locality of the property insured, is sufficient, as it cannot be intended that an absolutely perfect safe shall be kept. In this case there was a substantial compliance with the record warranty clause, and, in addition to this, the insurance company's agent was present on two occasions and examined the property, and fixed the value of the property himself, and the policy was afterwards written and delivered to the assured. The assured never saw the policy, he states, until after he had signed the papers..

The appellant contends, in the second place, that there was no waiver of the sole and unconditional ownership clause in the policy. This court has several times held that this provision in the policy is valid, but, like the record warranty clause, a strict compliance is not required, only a substantial compliance.

"The just and reasonable purpose in requiring the insured to have the unconditional and sole ownership of the property insured is to give protection only to those upon whom the loss insured against would inevitably fall but for the insurance, and to avoid taking risks for those whose lack of interest or whose contingent interest in the property insured might tend to encourage care-

lessness or wrongdoing in the use or preservation of the property. By fair construction and intendment the 'unconditional and sole ownership' of property for the purposes of insurance is in those upon whom the loss insured against would certainly fall, not as a matter of mere contract obligation, but as the result of real *bona fide* rights in the property insured.'' 14 Ruling Case Law, p. 1052.

This court has held that, in case of conditional sale of personal property in which the title is reserved in the vendor until the purchase price has been fully paid, the vendee is not considered the sole and unconditional owner, although he would be liable for the price in the event of the loss of the property. Some authorities hold that the vendee in possession is the sole and unconditional owner in the sense of the provision in the policy, since, if destroyed by fire, the loss would fall on the vendee and not on the vendor, but, even taking the view that the vendor is the owner, and that the vendee is not the sole and unconditional owner, still we think the provision in the policy in this case was substantially complied with. When the insurance company, in response to plaintiff's motion to make its answer in this particular more specific, filed an amendment to its answer, it stated, ''the plaintiff was not the sole and unconditional owner of the following property, included in his proof of loss, to wit: National Cash Register, National Credit File, Stimson Scales, Toledo Scales, bedstead and springs, 4 chairs, window curtains and shades, mattress and bed.'' Now, except those items, there is no contention that the plaintiff was not the sole and unconditional owner, and the undisputed proof shows that he was the sole and unconditional owner of most of the articles mentioned in defendant's amendment to its answer. The plaintiff, when the insurance contract was made, did not know that he was not the sole and unconditional owner of the others. The agent of the furniture company testified that the furniture company had a contract-retaining title, but that there was only a balance of $20.85 due. The plaintiff knew

he owed the furniture company something, but did not understand that the company retained title. There seems to be no question about the title to any other property, except the cash register. There was no controversy about the value of the property. The value of the property is shown by the proof at something over $3,000, and we think it would be unreasonable to hold that, when an insurance company writes a policy insuring a stock of merchandise and fixtures, the policy would be void because there might be one or two articles in the store which the assured had bought on conditional sale, the vendor retaining title, and especially in view of the fact that the assured did not know that the seller retained title. The insurance agent inspected all the stock and had an opportunity to know about it.

The object of the stipulation in the policy with reference to sole and unconditional ownership is to protect the company against taking risks on property for an amount disproportionate to the value of the interest of the insured.

Since, under the statute, strict compliance is not required, the unintentional error as to a very small portion of the property, as we have said, does not make the policy void. In this case there is no charge or evidence of any fraud or intention to deceive, but the only thing complained of, under this clause of the policy, is that there were one or two articles in the store to which the seller had retained title, and even this, it seems, was not known to the plaintiff.

The only other contention of appellant is that plaintiff's instruction No. 3, given by the court, was erroneous. Since we have held that there was a substantial compliance with the provision of the policy with reference to the sole and unconditional ownership clause of the policy, and the undisputed proof showing that the plaintiff is entitled to recover, the giving of an erroneous instruction by the court on the question of unconditional ownership was not prejudicial error. It therefore follows that the case must be affirmed.